RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0089P (6th Cir.)
File Name: 04a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMERICAN CIVIL LIBERTIES
UNION OF KENTUCKY, et al.,
    *Plaintiffs-Appellees,*

    *v.*

MCCREARY COUNTY,
KENTUCKY, et al.,
    *Defendants-Appellants.*

No. 01-5935

Appeal from the United States District Court
for the Eastern District of Kentucky at London.

Filed: March 23, 2004

Before: RYAN, CLAY, and GIBBONS, Circuit Judges.

_____

**ORDER**

_____

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

---

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is denied.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____

Clerk

**CLAY, Circuit Judge, concurring in denial of rehearing *en banc*, joined by Martin, J.**

In *Stone v. Graham,* 449 U.S. 39 (1980)(per curiam), the Supreme Court held that it was patently insufficient for the government to justify schoolhouse displays of the Ten Commandments merely by asserting that "[t]he secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States." *Id.* at 40 n.1. The Court reasoned that posting the Ten Commandments with only this disclaimer served no "educational function." *Id.* at 42.

The Court further opined that the display may have been permissible had the Ten Commandments been "integrated into the school curriculum…in an appropriate study of history, civilization, ethics, comparative religion, or the like." *Id.* (citation omitted). This statement was a critical component of the Court's holding. Indeed, the Supreme Court expressly endorsed this statement in *Lynch v. Donnelly,* 465 U.S. 668 (1984). *See id.* at 679 (expressing approval of *Stone* and noting that the *Stone* decision "carefully pointed out that the Commandments were posted purely as a religious admonition, not 'integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like'") (quoting *Stone,* 449 U.S. at 442.). The Court further elaborated that study of the Bible or of religion, "'when presented objectively as part of a secular program of education,'" may be effected consistently with the First Amendment. *Id.* at 679-80 (quoting *Abbington Sch. Dist. v. Schempp,* 374 U.S. 203, 225 (1963)).[1] Thus, both *Stone* and

---

[1]The Court also discussed *Stone* with approval in *County of Allegheny v. ACLU,* 492 U.S. 573, 590-91 n.40 (1989) ("[T]he content of a public school's curriculum may not be based on a desire to promote

*Lynch* support the view that the government's presentation of the Ten Commandments, or religious messages generally, is constitutional so long as the religious messages are presented objectively and as an integral component of an overarching secular subject matter.

This view is manifested even in those Supreme Court decisions upholding governmental displays containing patently religious symbols, including the cases cited by the dissent – *Lynch, supra,* and *County of Allegheny v. ACLU, supra.*[2] *Lynch* approved of a Christmastime display of a creche because that symbol, as a matter of fact in that case, shared a common secular link – the holiday season – with the numerous other secular symbols included in the display. The display was permissible because the secular connection between the symbols rendered "indirect, remote and incidental" the religious message that the creche would have conveyed standing alone. *Lynch,* 465 U.S. at 683. Consistently, the Court struck down a creche display in *County of Allegheny* because the creche was the display's solitary element. *County of Allegheny,* 492 U.S. at 599 (holding that "nothing in the context of the display detracts from the creche's religious message"). In contrast, through a series of fractured opinions, a majority of the Court in *County of Allegheny* approved the display of a menorah, alongside a

---

religious beliefs.…For the same reason, posting the Ten Commandments on the wall of a public-school classroom violates the Establishment Clause.") (citing *Stone, supra;* other citations omitted).

[2]The dissent's citation to *Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753 (1995) is baffling. That case is irrelevant because, there, the display of a cross involved *private* speech, not government speech as in the case at bar. *Id.* at 760, 765 ("There is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect.") (internal quotation marks, punctuation and citation omitted).

Christmas tree and an explanatory sign, because the overall theme conveyed by the display was one of diversity, secularism, the holiday season and/or freedom. These decisions demonstrate that the manner in which a display's religious and secular elements integrate with one another is highly relevant to the inquiry concerning the government's purpose behind the display.[3]

Using this approach, the panel concluded that the documents and symbols in Defendants' displays utterly lacked a unifying secular theme. The dissent has not disputed this conclusion. Under *Stone*, Defendants' mere assertion of such a unifying theme did not render the displays' purpose

---

[3]A hypothetical from Justice Stevens illustrates how the thematic integration of the Ten Commandments with secular symbols or messages, or the lack thereof, can render a display containing the Ten Commandments religious or non-religious in nature:

> … [A] carving of Moses holding the Ten Commandments, if that is the only adornment on a courtroom wall, conveys an equivocal message, perhaps of respect for Judaism, for religion in general, or for law. The addition of carvings depicting Confucius and Mohammed may honor religion, or particular religions, to an extent that the First Amendment does not tolerate any more than it does "the permanent erection of a large Latin cross on the roof of city hall." *See post* [492 U.S. at 661] (KENNEDY, J., concurring in judgment in part and dissenting in part). *Cf. Stone v. Graham,* 449 U.S. 39, 101 S. Ct. 192, 66 L.Ed.2d 199 (1980) (*per curiam*). Placement of secular figures such as Caesar Augustus, William Blackstone, Napoleon Bonaparte, and John Marshall alongside these three religious leaders, however, signals respect not for great proselytizers but for great lawgivers. It would be absurd to exclude such a fitting message from a courtroom, as it would to exclude religious paintings by Italian Renaissance masters from a public museum. Cf. *Lynch,* 465 U.S., at 712-713, 717, 104 S. Ct., at 1379-1380, 1382 (BRENNAN, J., dissenting).

*County of Allegheny,* 492 U.S. at 652-53 (Stevens, J., concurring, in part, and dissenting, in part).

secular. Moreover, neither Defendants' displays, nor their legal briefs, provided a shred of evidence to support the principal assertion in the courthouse displays that the Ten Commandments profoundly influenced the drafting of the Declaration of Independence. Defendants' schoolhouse displays did not even purport to cite to objective historical evidence, instead relying on the Harlan County School Board's subjective "belief" and "opinion" that the displays will "positively contribute to the …moral character of students" and "instill qualities desirable of the students in [their] schools." Like the display of the Ten Commandments in *Stone,* the schoolhouse displays, as a matter of fact, served no educational mission, as might have been the case had the Ten Commandments been integrated into the objective study of a secular subject matter. Defendants' posting of the Ten Commandments served no purpose but as a religious admonition. Accordingly, the content of the displays sufficiently demonstrated that Defendants' true purpose for the displays was religious.

The dissent suggests that as long as the Ten Commandments are displayed "as part of an array containing eight or nine otherwise secular, historical documents," further inquiry into Defendants' purpose must cease. This is wrong. Neither the Supreme Court nor this Court has ever adopted such a facile approach to the Establishment Clause. The determination of an Establishment Clause violation is a highly fact-specific inquiry that requires a court to pay careful attention to the content and context of the display containing a religious symbol. *See, e.g., County of Allegheny,* 492 U.S. at 597 (stating that the Court's task was "to determine whether the display of the creche and the menorah, in their respective 'particular physical settings,'" has the effect of endorsing or disapproving religious beliefs"); *Adland v. Russ,* 307 F.3d 471, 481 (6th Cir. 2002) (looking at the "intended physical context" of the Ten Commandments display). The dissent's approach would require courts to ignore disingenuous governmental attempts to convey religious

messages whenever it has included secular elements in its speech, no matter how unrelated those secular elements are to the religious elements. If followed to its logical conclusion, the dissent's approach would justify a classroom display of a crucifix or the Lord's Prayer, so long as surrounded by the Magna Carta, the Declaration of Independence, the Star Spangled Banner and, perhaps, excerpts from the Internal Revenue Code.

The dissent inaccurately refers to the panel's "sympathetic treatment of the district court's conclusion that the history of the defendants' earlier attempts to erect 'constitutionally invalid displays' had "imprinted the defendants' purpose, from the beginning, with an unconstitutional taint[.]""" (quoting *ACLU v. McCreary County,* 354 F.3d 438, 457 (6th Cir. 2003) (quoting *ACLU v. McCreary County,* 145 F. Supp. 2d 845, 850 (E.D. Ky. 2001)). In fact, the panel explicitly *rejected* the district court's heavy reliance on past conduct, instead concluding that "the history of Defendants' involvement with the displays *strongly indicated* that the primary purpose was religious." *McCreary County,* 354 F.3d at 348 (emphasis added; disagreeing with the district court's decision "to afford exclusive weight to Defendants' past conduct without addressing the specific content of the revised displays"). Although not dispositive of the issue, Defendants' prior unconstitutional conduct (initially displaying the Ten Commandments alone, in clear violation of *Stone,* then subsequently displaying the Ten Commandments alongside documents excerpted solely for their religious content), combined with the fact that Defendants added secular material only after this litigation ensued, was relevant evidence of their purpose behind the displays' final iteration.[4]

---

[4]This holding was justified by *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 309, 315 (2000) (looking at the "evolution" of the student-led prayer policy to determine whether an Establishment Clause violation had occurred).

A careful reading of the panel's opinion does not support the dissent's attempt to conjure a conflict with *Granzeier v. Middleton,* 173 F.3d 568 (6th Cir. 1999).

Finally, the dissent argues that "the lead opinion erroneously applies the heightened Establishment Clause standards for public schools to other public buildings such as courthouses." This argument is incorrect and misleading. First, the discussion of the public school and courthouse settings appeared in my separate discussion of the "endorsement" prong of the three-part test under *Lemon v. Kurtzman,* 403 U.S. 602 (1971). Judge Gibbons did not join this aspect of my opinion and, therefore, the discussion was not adopted by a majority of the panel. It would have been inappropriate for the entire Court to review this non-binding opinion.

Second, my opinion did not equate the public school and courthouse settings for all Establishment Clause purposes. Rather, the opinion observed that citizens typically conduct business at a courthouse by necessity, many times subject to the coercive powers of the court, and, therefore, they are a captive audience, similar to public school students, who are subject to mandatory attendance requirements. Further, the fact that a courthouse is so plainly the seat of government requires courts to exercise special care to ensure that a governmental display containing religious symbols is not tantamount to governmental endorsement of those symbols. *See McCreary County,* 354 F.3d at 461.

Third, my opinion never suggested that the same concerns about governmental coercion and endorsement apply to all public buildings. As the authorities cited above hold, the inquiry into an alleged Establishment Clause violation is a highly fact-specific inquiry that depends, in part, on the particular physical setting of the speech at issue. I expressed no opinion about a display containing the Ten Commandments outside of a public school or a courthouse.

For the foregoing reasons, I concur in the decision of the *en banc* Court denying review of the panel opinion.

**BOGGS, Chief Judge, dissenting from the denial of rehearing en banc, joined by Batchelder, J.**  The core question in this case is whether the district court and the panel majority erred in holding, as a matter of law, that despite the statement of historical and patriotic secular purpose included in *each* display at issue here, and despite the five separate secular purposes for the displays articulated by the defendants in the district court, they nonetheless have an essentially religious purpose because the Ten Commandments appear beside eight or nine otherwise indisputably secular documents.

This court has held that in Establishment Clause cases federal courts must defer to the government's articulation of a secular purpose unless the stated purpose is shown to be a "sham." *Chaudhuri v. Tenn.*, 130 F.3d 232, 236 (6th Cir. 1997). That rule has been misapplied by the panel majority.

In coming to the conclusion that the defendants' carefully articulated secular purposes are a sham, the court ignores the First Amendment principles laid out in *County of Allegheny v. ACLU*, 492 U.S. 573 (1989), and *Lynch v. Donnelly*, 465 U.S. 668 (1984). It establishes a new and heightened standard of proof, holding that the displays lacked a secular purpose *because* they "provided the viewer with no analytical or historical connection between the Ten Commandments and the other historical documents." *ACLU of Ky. v. McCreary County*, 354 F.3d 438, 453 (6th Cir. 2003). Neither the Supreme Court nor this court has ever adopted such a standard. On the contrary, the Supreme Court has upheld displays of a cross, *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 766 (1995) (plurality opinion), a creche, *Lynch*, 465 U.S. 668, and a menorah, *County of Allegheny*, 492 U.S. 573, none of which made explicit an "analytical or historical connection" between the religious item and other, secular items in the displays.

The implication of the court's decision is that the presence of the Ten Commandments, in an array containing indisputably historical and patriotic secular documents, converts the whole into a display having a primarily religious purpose. The panel majority appears to have drawn this rule from *Stone v. Graham*, 449 U.S. 39 (1980), a brief, *per curiam* disposition that preceded both *Lynch* and *Donnelly*, and that bears no meaningful factual resemblance to this case. *Stone* struck down a Kentucky statute that *mandated* the posting of the Ten Commandments, *standing alone*, in every classroom in the Commonwealth. In *dicta*, the Court stated that the Ten Commandments "*may* constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like." 449 U.S. at 42 (citing *Sch. Dist. of Abington Township v. Schempp*, 374 U.S. 203, 225 (1963)) (emphasis added). I do not believe this language can be read as an attempt to state binding limits on all future constitutionally valid displays. And even if it were to be read in that aggressive fashion, *Stone* certainly does not suggest that a display that includes the Ten Commandments as part of an array containing eight or nine otherwise secular, historical documents, violates the First Amendment unless the display also provides an explicit analytical or historical connection between the clearly secular and the arguably religious items.

Another troubling aspect of the majority opinion concerns its sympathetic treatment of the district court's conclusion that the history of the defendants' earlier attempts to erect "constitutionally invalid displays" had "'imprinted the defendants' purpose, from the beginning, with an unconstitutional taint[.]'" *McCreary County*, 354 F.3d at 457 (quoting *ACLU of Ky. v, McCreary County*, 145 F. Supp. 2d 845, 850 (E.D. Ky. 2001)). I think the history of the defendants' displays is entitled to considerably less weight than the majority gives it. Our court has previously expressed great reluctance to allow a government's past actions to taint its future actions from the standpoint of the Establishment Clause. In *Granzeier v. Middleton*, 173 F.3d 568 (6th Cir.

1999), we held that the government could close its offices on Good Friday without violating the Establishment Clause by adopting a "spring weekend" rationale, even though there was evidence that the government's purpose was originally religious, including a poster put up by a government employee depicting the Crucifixion. We stated that "the fact that a particular closing was once constitutionally suspect does not prevent it from being reinstated in a constitutional form." *Id.* at 574. Our holding in *Granzeier* reflects an important principle of equal treatment that is slighted by the panel's opinion. In general, governmental bodies, like other litigants, should be free to take instruction from prior decisions or arguments, and thus to eschew, or move away from, practices that are contrary to law.[5]

Finally, the lead opinion erroneously applies the heightened Establishment Clause standards for public schools to other public buildings such as courthouses. *See McCreary County*, 354 F.3d at 461. This ignores the reasons given by the Supreme Court for creating a heightened constitutional

---

[5] The holding and reasoning of *Granzeier* are consistent with the Supreme Court's decision in *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), relied upon by the panel. While the *Santa Fe* majority considered both the "text and history" of the school policy at issue in that case, which authorized a student-elected speaker to make an "invocation" to "solemnize" home football games, *id.* at 298 & n.6, 315, it also made clear that the policy was, in fact, invalid on its face. *Id.* at 306-07, 314-15; *see id.* at 315 ("The narrow question before us is whether implementation of the October policy insulates the continuation of such prayers from constitutional scrutiny."). Moreover, the evidence of a "continuous" Establishment Clause violation, as well as other troubling aspects of the case's history, were far stronger in *Santa Fe* than in this case, where the counties have seriously rethought and reorganized their displays in response to constitutional concerns. *Cf. id.* at 294-98 (detailing various cosmetic alterations made to school district's longstanding policy of pregame and graduation prayers, which were frequently explicitly Christian in nature; also noting that the record suggested that there had been official harassment and intimidation of the *Santa Fe* plaintiffs during the litigation).

standard in public schools, namely that young children are impressionable and that the state exercises coercive power through mandatory school attendance requirements. *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987). By applying these heightened requirements to courthouses and other public buildings, the lead opinion not only misapplies the law, it also invites a new round of First Amendment challenges to religious texts and symbols that are nearly ubiquitous in non-schoolhouse public buildings throughout the nation, particularly courthouses.

The court's decision, that the Ten Commandments' text is impermissible as one of ten otherwise secular documents, gives no further guidance. Would it be permissible as one of twenty other texts, or one of one hundred? Would it make a difference if the display involved a pictorial representation, rather than a text?

I have seen at one institution what seemed to me a possible solution to some controversies of this type. There was a representation of two tablets, bearing only the Roman numerals from "I" to "X." This left it to all observers to decide what exact text they wished to impose on that symbol. But under the court's decision, I have no idea if even this display could pass muster.

Believing the panel's decision to be both draconian and legally unsupported, I would rehear this case, so that the full court could give it more nuanced consideration. I therefore respectfully dissent from the denial of rehearing en banc.